UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO:  4:11-cv-00242-RS-WCS

FLORIDA DEPARTMENT OF FINANCIAL
SERVICES as RECEIVER for AMERICAN
SUPERIOR INSURANCE COMPANY, and as
Assignee of William Van Meter, Timothy Renfro,
William S. Latta, Gregory D. Hudson, and Richard
Duer,

          Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA,

          Defendant.

_____/

**DEFENDANT NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA.'S
MOTION TO COMPEL PLAINTIFF'S
ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS,
AND INCORPORATED MEMORANDUM OF LAW**

Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union")

moves to compel Plaintiff to answer interrogatories 8, 13, 18, and 19, and to produce certain

documents, pursuant to Federal Rules of Civil Procedure 33, 34, and 37, and Northern District of

Florida Local Rule 26.2.

Plaintiff should be required to answer Interrogatories 8, 13, 18, and 19, in full and

without objection.  These interrogatories are squarely within the bounds set by the Federal Rules,

are relevant to Plaintiff's suit, are not harassing or unduly burdensome, and are clearly stated.

With respect to the documents listed on Plaintiff's Privilege Log provided with its

responses to National Union's Requests for Production, Plaintiff should be required to produce

all of the materials created before April 5, 2011, because it has been statutorily deprived of any privilege for those materials. Moreover, Plaintiff should be required to produce all documents listed on the Log that were created by, sent to, or received from James Newman or Richard Law, because Plaintiff has waived any work product protection for those Newman and Law materials.

With respect to the documents listed on Plaintiff's separate "Wayne Johnson" Privilege Log, Plaintiff should produce all materials that are (a) responsive to National Union's Requests for Production and (b) were prepared before April 5, 2011, because it has been statutorily deprived of any privilege.

## Memorandum of Law

Plaintiff's objections, refusals, omissions, and withheld documents are not justified by the law or the facts of its suit. Plaintiff should be compelled to answer each of the four Interrogatories set forth below.[1]  Additionally, Plaintiff should be required to produce the materials specified above, as listed on its RFP Privilege Log and its Johnson Privilege Log, due to its waiver and statutory deprivation of work product protection or privilege.

### I.        Plaintiff Must Answer Interrogatories 13, 18, 19, and 8

### National Union's Interrogatory No. 13

**Interrogatory:**

If you contend that the agreements and Consent Judgment attached as Exhibit E to Plaintiff's Complaint, and the amount(s) of the settlement represented thereby, were reasonable and made in good faith, state in detail the grounds for that answer, including an identification of all documents on which it is based, and including without limitation all reasons relating to the merits of the claims asserted and the defenses and denials thereof, and the amount of damages claimed to have been caused by the Directors' breaches of fiduciary duties.

**Answer:**

---

[1]  In accordance with Local Rule 26.2, each interrogatory and Plaintiff's response thereto is quoted verbatim herein.  The Interrogatories and Plaintiff's Amended Answers thereto are also attached as Exhibits A and B, respectively.

Objection:   The interrogatory on its face is overbroad and unduly burdensome in that it essentially asks for every fact (i.e. "including an identification of all documents on which it is based" and "including without limitation all reasons relating to the merits of the claims asserted...") in support of a particular issue. See *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998)("The court will generally find them overly broad and unduly burdensome on their face to the extent they ask for "every fact" which supports identified allegations or defenses."). See also *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000)("An interrogatory may reasonably ask for the material or principal facts which support a party's contentions in the case... However, "to require specifically 'each and every' fact and application of law to fact ... would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details...").

Plaintiff attached multiple agreements and a Consent Judgment as composite Exhibit E to its Complaint. (Compl., Ex. E)  Plaintiff characterizes those agreements as *Coblentz* agreements, and claims that the Directors "had indemnity rights under the subject D&O Policy" for the "consent judgment." (Compl., ¶¶ 28, 34)  This Interrogatory asks whether Plaintiff contends that those agreements and judgment were "reasonable and made in good faith." Plaintiff's own Complaint asserts that "[t]he subject agreements were entered in good faith at arm's length… Further, the amount of the Consent Final Judgment ($15,953,548) represented the reasonable value of the Department's damages and was supported by evidence and expert witnesses." (Compl., ¶ 29)

This Interrogatory seeks to clarify Plaintiff's contentions as to reasonableness and good faith, and to identify the reasons why they were reasonable and in good faith (if they are contended to be).  These questions are relevant not only because of Plaintiff's explicit allegations in its Complaint, but also because Florida law mandates that such a Plaintiff, "a party seeking to recover under a *Coblentz* agreement must prove," among other requirements, "that the settlement was objectively reasonable and made in good faith." *Sinni v. Scottsdale Ins. Co.,* 676 F.Supp.2d 1319, 1324 (M.D. Fla. 2010).  Likewise, National Union has asserted as a defense that the "underlying settlement between Plaintiff and each of the Directors was not reasonable and made in good faith." (D.E. 23-1, p.11, ¶ 23)  Accordingly, this Interrogatory does not inquire as to

anything that is not directly relevant to the parties' claims and defenses.

Plaintiff has made no effort to explain how this Interrogatory is unduly burdensome or overbroad, nor did it provide <u>any</u> answer to the Interrogatory. Plaintiffs' citations are inapposite and unhelpful—*this* Interrogatory does *not* "ask for every fact" or "each and every fact." Moreover, "'[c]ontention interrogatories' that ask a party what it contends or to state all the facts upon which it bases a contention are perfectly legitimate." *In re Rail Freight Fuel Surcharge Antitrust Lit.*, __ F.R.D. __, 2011 WL 5603995 *2 (D.D.C. Nov. 17, 2011). Plaintiff did not propose any narrowing of this interrogatory, or offer any information at all. Plaintiff contends that it asks too much as to "all," *yet it refuses to answer as to any.* Nor does the interrogatory go beyond the bounds of relevance or of the scope of permissible discovery set by the Civil Rules.

For all of these reasons, Plaintiff should be compelled to answer Interrogatory 13.

## National Union's Interrogatory No. 18

**Interrogatory:**

If you contend that any of the Policy's terms, provisions, or exclusions (specifically including without limitation the terms, provisions, and exclusions referenced in Plaintiff's Complaint or in National Union's Defenses) are ambiguous, identify the claimed ambiguity, what you contend to be the correct interpretation of the claimed ambiguity, and the bases therefor.

**Answer:**

Objection: This interrogatory calls for pure legal opinion and is invasive of the work product privilege as it seeks the mental impressions of counsel. The interrogatory does not ask for facts which support a legal contention that the Plaintiff is making in the case; rather it asks for Plaintiff to give a legal opinion on the interpretation of policy terms and to explain the legal basis for the opinion. This type of question is not an appropriate contention interrogatory. See also *O'Brien v. Int'l Broth. of Elec. Workers*, 443 F. Supp. 1182, 1187-88 (N.D. Ga. 1977)("In contrast to the interrogatory previously discussed, this question seeks pure legal conclusions which are related not to the facts, but to the law of the case. While the line demarcating permissible discovery under Rule 33(b) may be obscure, the court concludes that this interrogatory exceeds the bounds of permissible discovery under the rule."); See also *Myers v. Goldco, Inc.*, 4:08CV8- RH/WCS, 2008 WL 1995131 (N.D. Fla. May 6, 2008)(denying motion to compel response to portion of an interrogatory which asked for an explanation of "how each document supports your claims" as the interrogatory sought the mental impressions of plaintiff's attorney).

This is a simple contention interrogatory. This action is based on Plaintiff's contentions that the insurance policy at issue covers certain "claims." Plaintiff's Complaint asserts that National Union breached its insurance contract, asserts that "claims" were made as required by the policy during the policy period, and asserts that a certain exclusion does not apply, but does not directly state whether any relevant portion of the parties' contract is ambiguous, in this context. (*See* Compl.) When asked, Plaintiff refuses to say one way or the other. Defendant is entitled to know whether Plaintiff contends that any policy provisions involved in the suit are ambiguous and, if so, which ones and how they are ambiguous. Doing so serves to narrow and define the issues in the action. If Plaintiff does *not* contend that any portion of the Policy is ambiguous, then it should simply say so. If Plaintiff *does* contend that a portion of the Policy is ambiguous, then Plaintiff should identify that ambiguity, provide what Plaintiff contends to be the correct interpretation of the Policy, and state why.

"[I]nterrogatories are not only an information gathering tool, but also an opportunity to require one's opponent to state its position on an issue in controversy in writing and under oath." *In re Rail Freight Fuel Surcharge Antitrust Lit.*, __ F.R.D. __, 2011 WL 5603995 *1 (D.D.C. Nov. 17, 2011). Federal Rule of Civil Procedure 33 states that an "interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." As explained by a Magistrate for the Northern District, "'Contention' interrogatories are interrogatories that seek to clarify the basis for or scope of an adversary's legal claims. The general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 2008 WL 1816418 *4-5 (N.D. Fla. Apr. 22, 2008)(granting motion to compel answer to interrogatory). Even the *Myers* case cited in Plaintiff's response noted as much. *See*

*Myers v. Goldco, Inc.*, 2008 WL 1995131, n. 2 (N.D. Fla. May 6, 2008).   Likewise, Plaintiff's cited *O'Brien* case explained that a "question seeks to discover defendant's legal theory based on the facts elicited from other interrogatories," and that Rule 33 "makes clear that such discovery is in fact permissible." *O'Brien v. Int'l Bro. of Elec. Workers*, 443 F.Supp. 1182, 1187 (N.D. Ga. 1977).   *O'Brien* further explained that "[t]his rule cuts against many older cases which imposed a strict rule against opinions, contentions and conclusions," and noted that the 1970 "Advisory Committee Note only excludes those interrogatories which 'extend to issues of 'pure law,' i.e., legal issues unrelated to the facts of the case." *Id.*   Accordingly, *O'Brien* found that an interrogatory sought "an application of law to the central facts of the case, and accordingly is permissible under Rule 33(b)." *Id.*

Moreover, as for the Plaintiff's objection that this Interrogatory "is invasive of the work product privilege as it seeks the mental impressions of counsel," the work product doctrine is not a valid objection to a contention interrogatory. "**Indeed, Rule 33 expressly permits contention interrogatories that delve into opinion work product** 'because it asks for an opinion or contention that relates to fact or the application of law to fact.'" *Okla. v. Tyson Foods, Inc.*, 262 F.R.D. 617, 630 (N.D. Okla. 2009)(emph. added).   *See also In re Continental Capital Inv. Servs., Inc.*, 2009 WL 1661918 *6 (Bankr. N.D. Ohio Mar. 6, 2009)("Courts generally reject the application of the work product doctrine to contention interrogatories, as permitted by Rule 33(a)(2)."); *In re Rail Freight,* 2011 WL 5603995 at *2 ("any broad claim that an interrogatory is impermissible because it probes a party's contentions as to how the law applies to the facts is wrong. Such probing is perfectly permissible and does not invade the work product privilege merely because the party's counsel must disclose the reasoning applying the law to the facts.").

In sum, as a Federal Magistrate recently explained, there is "nothing in the wording of the

rule or its interpretation that could possibly bar asking a party what it contends and why." *In re*

*Rail Freight*, 2011 WL 5603995 at *3.  Plaintiff should be compelled to answer Interrogatory 18.

### National Union's Interrogatory No. 19

**Interrogatory:**

Explain whether DFS, American Superior, or any of the Directors relied on any fact, communication, or document other than the contents of the Policy attached as Exhibit A to the Complaint in determining the existence and scope of coverage afforded by the Policy, and if so, identify those sources with specificity.

**Answer**:

Objection: Plaintiff objects to the interrogatory as vague and ambiguous as it relates to "determining the existence and scope of coverage." Plaintiff does not understand the context in which DFS, American Superior or any of the Directors would "determine the existence and scope of coverage" except in the contest [sic] of its attorneys making a legal determination in connection with this litigation. To the extent that the interrogatory seeks Plaintiff's counsel's legal opinions concerning whether there is coverage and the scope of such coverage afforded by the Policy, Plaintiff objects on grounds of work product. If Defendant is attempting to ask a different question, the interrogatory is vague in failing to explain how and why DFS, American Superior or any of the Directors would (or could) be making a coverage determination.

This is a straightforward interrogatory – essentially, did DFS or the insureds rely on something other than the Policy document itself in determining the Policy's coverage?  If yes, what was that other source?  For example, if an insured will assert that it relied on a conversation, a letter, a proposed endorsement, etc., then National Union would need to pursue discovery regarding that document or event (while reserving its arguments that any such purported extra-contractual statements or representations are relevant or alter the express terms of the policy.)

Plaintiff's objection that "the interrogatory [is] vague and ambiguous as it relates to 'determining the existence and scope of coverage'" is not legitimate.  The entire basis of the suit is Plaintiff's claim that the policy provides coverage for certain "claims."  Not surprisingly, Plaintiff's own Complaint uses the term "coverage" frequently.  Plaintiff cannot reasonably

profess ignorance and an inability to understand such an interrogatory in this action. (*See* Compl., ¶¶ 17, 26, 27, n.2, p.5 ("National Union denied coverage;" "National Union had also denied coverage;" "National Union Received Timely Notice of the Claim to Trigger Coverage;" "allegations were covered;" "proper notice of covered claims, National Union denied coverage")) <u>Plaintiff's core claim in this suit is that "National Union breached the terms of the D&O Policy by denying coverage."</u> (Compl., ¶ 33)  Accordingly, the term "coverage" in this context is not vague or ambiguous.

Secondly, Plaintiff "object[ed] on grounds of work product."  This is a factual interrogatory, asking a factual question.  A fact is not protected "work product" just because an attorney knows it. *See, e.g., 2000 Island Blvd. Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 2011 WL 3441621 *2 (S.D. Fla. July 25, 2011)(the work-product "doctrine protects an attorney's mental impressions or legal theories, but not the underlying facts of a dispute"); *Okla. v. Tyson Foods, Inc.*, 262 F.R.D. 617, 629 (N.D. Okla. 2009)("the facts contained in that work product can be discovered through the use of interrogatories…Neither can a party refuse to respond to an interrogatory requesting factual information because that information is known only to its attorney.").  The Interrogatory does not ask for *anyone's* "legal opinions concerning whether there is coverage and the scope of such coverage."  Counsel for National Union has emphasized these parameters in correspondence to Plaintiff's counsel.

Finally, Plaintiff did <u>not</u> answer that it does not know and cannot ascertain the answer.

Accordingly, Plaintiff should be required to <u>answer</u> National Union's Interrogatory Number 19—*yes or no, and if so, what.*

## National Union's Interrogatory No. 8

**Interrogatory:**

Identify, and give the bases for your answer, the total damage caused by each of the Directors to American Superior, by the breach(es) of fiduciary duty alleged in the 2007 Complaint.

**Answer:**

The total damages by the Directors is as follows. Four Million Three Hundred Sixty Seven Thousand Five Hundred Forty Eight ($4,367,548.00) Dollars representing damages relating to claims for excessive compensation of William Van Meter and Timothy Renfro, plus Eleven Million Five Hundred Eighty Six Thousand ($11,586,000.00) Dollars representing damages relating to the excessive expenses paid by American Superior Insurance Company, for a total of Fifteen Million Nine Hundred Fifty Three Thousand Five Hundred Forty Eight ($15,953,548.00) Dollars.

The basis for the amount of the excessive compensation damages was a comparison by James W. Newman, Jr. of the compensation of William Van Meter and Tim Renfro to the compensation of other top executives of comparable insurance companies.

The basis for the amount of the damages relating to excessive expenses was the amount charged by American Superior's managing general agent, American Superior Management Company, above its actual operating costs which was subsequently up-streamed to its holding company, American Superior Holding Company, and utilized to pay down the holding company's debt. The amount was determined by Richard Law.

Plaintiff made no objection; yet, Plaintiff did not <u>answer</u> what this Interrogatory asked. Nor did Plaintiff assert that it did not know, or could not answer. Accordingly, Plaintiff should be required to answer exactly what was asked by this Interrogatory. *See Waters Edge Living, LLC v. RSUI Indem. Co.*, 2008 WL 1816418 *6 (N.D. Fla. Apr. 22, 2008)(granting motion to compel and requiring party to "answer this interrogatory exactly as it is written"); *Fed. Prac. & Pro.*, § 2173 (2011)(party "must either answer the interrogatory or object"); Fed. R. Civ. P. 33(b)(2)("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath").

Although the Interrogatory asked for the damage caused by "<u>each of the Directors,</u>" Plaintiff did not provide that information. The Interrogatories defined "Directors" to mean five named individuals. "Each" is commonly understood and defined to mean "every," "apiece; for

one," or "each one." *Roget's 21ˢᵗ Century Thesaurus* (1993)("each"). Accordingly, the Interrogatory asked for the damage caused by each one of the Directors, by every Director, "apiece." Yet, Plaintiff answered by lumping all five individuals together, without differentiating as to the damage caused by "each of the Directors." Plaintiff should be required to answer this clear and reasonable Interrogatory as to <u>each</u> of the Directors.

This information is relevant because Plaintiff claims that it "entered into a *Coblentz* agreement whereby the Directors consented to judgment and assigned their rights." (Compl., ¶ 28)  Plaintiff attached copies of those *Coblentz* agreements to its Complaint, which agreements state that <u>each of the directors agreed to a consent judgment being entered</u> against them for over $ 15 million, jointly and severally. (Compl., ¶ 28, Ex. E)  The law is clear that such an agreement must be reasonable, including reasonable *in amount.*[2]  Likewise, National Union has asserted as a defense that the "underlying settlement between Plaintiff and each of the Directors was not reasonable and made in good faith." (D.E. 23-1, p.11, ¶ 23)  National Union's Interrogatory asks how much damages each of the five directors allegedly caused, which is clearly relevant to the reasonableness of a $15 million judgment.  Accordingly, this Interrogatory is directly relevant to the parties' claims and defenses.

Moreover, Plaintiff cannot duck this Interrogatory's request for the "bases" of the alleged damages by referring to a "determin[ation] by Richard Law" and a "comparison by James W.

---

[2] *See, e.g., Sinni v. Scottsdale Ins. Co.,* 676 F.Supp.2d 1319, 1324 (M.D. Fla. 2010)("In Florida, a party seeking to recover under a *Coblentz* agreement must prove: (1) coverage; (2) a wrongful refusal to defend; and (3) that the settlement was objectively reasonable and made in good faith.");  *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 2009 WL 151715 *4 (S.D. Fla. Jan. 16, 2009)("The courts impose good faith and reasonableness requirements in these cases due to the risk that the 'settlement of liability and damages' in a settlement agreement 'may have little relationship to the strength of a plaintiff's claim' where the insured may never be obligated to pay and has little to lose if he stipulates to a large sum with the plaintiff.");  *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So.2d 589, 592 (Fla. 2d DCA 1984)("settlement may not be enforced against the carrier if it is unreasonable in amount").

Newman, Jr.," <u>without producing those documents</u>.  Rule 33 admittedly permits a party to refer to—*and produce*—documents in lieu of a narrative answer to an interrogatory.[3]   However, Plaintiff has refused to produce the very materials it cites.  Nor does Plaintiff contend that the referenced documents are not in its custody, control, or possession.

Importantly, even in its Amended Answers, **Plaintiff did *not object*** to answering or to providing the referenced documents, and did not assert that it did not *know* the answers.  Accordingly, Plaintiff cannot now be heard to raise any objections to answering this Interrogatory in full. *See* Fed. R. Civ. P. 33(b)(4)("The grounds for objecting to an interrogatory must be stated with specificity.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *Fed. Prac. & Pro.*, § 2173 (2011)("failure to object within the time fixed by the rule is a waiver of objections, as the rule now says").  *See also Cardenas v. Dorel Juvenile Grp., Inc.*, 231 F.R.D. 616, 618 (D.Kan. 2005); *Fonville v. D.C.*, 230 F.R.D. 38, 42 (D.D.C. 2005).

Counsel for National Union subsequently corresponded with counsel for Plaintiff on November 11th, advising that if Plaintiff was not going to produce the analyses of Mr. Law and Mr. Newman referenced by Plaintiff's Interrogatory Number 8, "then we ask that Plaintiff either amend its answer to Interrogatory Number 8, to fully answer what was asked, **or** produce the Law and Newman 'comparison' and 'determin[ation]' referenced by Plaintiff's current answer."  On November 14, counsel for Plaintiff advised via e-mail that "We stand by our answer to this Interrogatory," and with respect to Mr. Newman and Mr. Law, "We are not, however, producing any of their draft reports or analysis as these materials are privileged." Nor was any such "final" report or analysis produced.

---

[3] Rule 33(d) provides an "Option to <u>Produce</u> Business Records." (emph. added)

**First, Plaintiff made no such assertion in its Answer to Interrogatory No. 8 —
Plaintiff did *not* invoke any privilege.** Accordingly, any objection it may have had is waived.
*See* Fed. R. Civ. P. 33(b)(4); *Essex Builders Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682,
686 (M.D. Fla. 2005)(party must provide supplemental answers to interrogatories without any
new objections). Secondly, Plaintiff may not avoid disclosing the <u>facts</u> sought by this
Interrogatory. *See Okla. v. Tyson Foods, Inc.*, 262 F.R.D. 617, 629 (N.D. Okla. 2009)("the facts
contained in that work product can be discovered through the use of interrogatories…Neither can
a party refuse to respond to an interrogatory requesting factual information because that
information is known only to its attorney."). Finally, Plaintiff could not—even if it *had* actually
objected in its Interrogatory response—claim "work product" protection for these Law and
Newman analyses and reports, as discussed in detail below.

Accordingly, Plaintiff should be required to answer Interrogatory Number 8, completely
and without objection. The information sought is relevant to the party's claims and defenses,
Plaintiff did not raise any objection, and Plaintiff did not claim that it did not know or have the
information reasonably available to it.

## II.    Plaintiff Must Produce the Materials Listed on Plaintiff's RFP Privilege Log

Plaintiff's responses to Requests for Production Nos. 2,[4] 8,[5] 17,[6] 18,[7] and 20[8] each
included an objection to producing 'privileged' materials, as identified on its attached privilege

---

[4] **2. All documents delineating, explaining, supporting, or constituting the analyses,
identified by Plaintiff in its July 14, 2011 Initial Disclosures in this action, at page 8, within
Section C.** Response: Responsive, non-privileged documents will be made available for
inspection and copying at the undersigned's office. The Department objects to this Request to
the extent it seeks privileged documents, which are listed in the attached privilege log.

[5] **8. All deposition, hearing, trial or other transcripts (including any video component of a
deposition, hearing or trial), notices of deposition, witness lists, exhibit lists, affidavits,
declarations, pleadings, motions, discovery responses, expert reports, offers of judgment,
mediation summaries, orders, and other documents served by or on DFS in the 2007 Suit,**

log ("RFP Privilege Log"). (National Union's First Requests for Production are Exhibit **D** hereto,

Plaintiff's Responses are Exhibit **E**, and its RFP Privilege Log is Exhibit **F**, with the list of

---

**filed with the Court in the 2007 Suit, or produced received, or provided in the course of discovery in the 2007 Suit.** Response:  Responsive documents will be made available for inspection and copying at the undersigned's office, with the exception of the Department's mediation summary and draft expert reports, which are privileged thus included on the attached privileged. [sic]

[6] **17. All documents constituting, reflecting, or relating to the decision of any party to any of the agreements attached as Exhibit E to Plaintiff's Complaint to enter into any of those agreements.  This includes without limitation any documents setting out or analyzing whether to enter into such agreements and on what terms.**  Response:  Responsive, non-privileged documents will be made available for inspection and copying at the undersigned's office.   The Department objects to this Request to the extent it seeks internal documents concerning the Department's decision to enter into the settlement agreements.  These documents are attorney-client and work-product privileged and thus included on the attached privilege log.

[7] **18. All documents constituting, reflecting, or relating to the negotiation or terms of any of the agreements attached as Exhibit E to Plaintiff's Complaint, whether or not such documents were transmitted to or shown to any of the defendants in the 2007 Suit.**  Response:  Responsive, non-privileged documents will be made available for inspection and copying at the undersigned's office.  The Department objects to this Request to the extent it seeks internal documents relating or reflecting the Department's negotiations with the defendants.  These documents are attorney-client and work-product privileged and thus included on the attached privilege log.

[8] **20. All documents discussing, evidencing, contradicting, explaining, reporting, summarizing, or otherwise relating to the factual claims and allegations of the 2007 Suit against any of the defendants named therein, to the extent not produced in response to any of the foregoing requests.**  Response:  The Department objects to this Request on the grounds that it is overly broad, lacks reasonable particularity, is burdensome, and calls for documents protected by the attorney-client and work-product privileges.  More specifically, this Request does not limit, either by category, event, document or general description, the types of documents which would be responsive to this Request. As a result, the Department does not have reasonable notice what is called for and what is not called for by this Request.  What's more, by use of such words as 'otherwise relating,' this Request calls for every document generated by counsel and others in connection with the underlying litigation. The Department reserves the right to provide an affidavit describing the extent of such burden.  Further, this Request, because of its broad language, calls for letters, emails and other internal documents and communications protected by the attorney-client and work-product privileges. Because the Request seeks documents over an extended period of time and such documents are voluminous, the creation of a document-by-document privilege log would be unduly burdensome. As a result, the Department has prepared category-based privilege log entries for this Request. *See generally MCC Management of Naples, Inc. v. Arnold & Porter, LLP,* 2010 WL 2431849 (M.D.Fla. 2010).

persons subsequently provided by Plaintiff at **F-1**.)   Plaintiff has claimed "work product" protection for certain documents, but Plaintiff has clearly waived its ability to protect the Newman and Law materials listed on its RFP Privilege Log.   Additionally, Florida's public records laws have statutorily deprived Plaintiff of privilege for *all* materials on the RFP Privilege Log, created before April 5, 2011.

A.   **Plaintiff has waived any work product protection for Law and Newman expert materials.**

In its RFP Privilege Log (*see, e.g.,* lines 47, 54, 63, 65, 67, 76, 80-83), Plaintiff indicates that it has withheld communications with, and reports, analyses, and other materials created by, its experts in its 2007 Suit—James Newman and Richard Law—due to "work product."[9] However, Plaintiff has <u>waived</u> any otherwise-applicable work product protection for those materials.   In addition to waiver under Federal Rule of Evidence 502(a), Plaintiff has also waived any work-product protection by the common-law "At Issue" doctrine.

"[F]ederal law controls in disputes over work product immunity in diversity cases" such as this. *Maplewood Partners v. Indian Harbor Ins. Co.,* 2011 WL 3918597 *3 (S.D. Fla. Sept. 6,

---

[9] It is not clear whether Plaintiff is asserting simply "work product" protection, under Rule 26(b)(3), or whether Plaintiff is also or instead seeking protection under Rule 26(b)(4).   First, even if Rule 26(b)(4) applied, Plaintiff has still waived any such protection, and has still been statutorily deprived of its ability to assert a privilege.   Secondly, the text of Rule **26(b)(4)** indicates that it does **not** apply in the instant circumstances, as follows.   Sub-section (A) addresses depositions only, and subsection (D) addresses depositions and interrogatories—not document production.   Sub-section (B) only addresses drafts of *the report required under Rule 26(a)(2),* and sub-section (C) likewise addresses communications between the attorney and "witness required to provide a report under Rule 26(a)(2)(B)."   National Union does *not seek* drafts of any report prepared for and to be filed in this litigation, pursuant to Rule 26(a)(2)(B), and the log provides no indication of such materials.   National Union has no idea whether Plaintiff will use Newman or Law in the instant case, whether Newman or Law will ever be "Witnesses Who Must Provide a Written Report," and National Union does not seek any materials shielded by Rule 26(b)(4) with respect to the instant suit.   National Union seeks Newman and Law communications and analyses for or during the *prior,* resolved, 2007 Suit in state court.   Finally, even if Rule 26(b)(4)(C) *did* apply, it is unclear from the Log whether *non-*protected communications specified at 26(b)(4)(C) have been withheld.

2011).  As the party claiming protection, Plaintiff bears the "burden to demonstrate the applicability of the work-product doctrine." *Stern v. O'Quinn*, 253 F.R.D. 663, 674 (S.D. Fla. 2008).  Moreover, "[w]ork product is a 'qualified privilege.' It can thus be waived in a variety of ways." *Kallas v. Carnival Corp.*, 2008 WL 2222152 *4 (S.D. Fla. May 27, 2008).

### i.    Waiver under Evidence Rule 502

Plaintiff's intentional but selective disclosure of information—its "Sword and Shield"[10] stance—has waived work product protection for the Newman and Law materials, as provided by Federal Rule of Evidence 502(a).  Rule 502 does not supplant other common law waiver doctrines, but addresses the scope of waiver under its specified circumstances.  *See* Adv. Comm. Note.

Rule 502 applies to "disclosure of a communication or information covered by the attorney-client privilege or work-product protection," "in a Federal proceeding" (including document production and other discovery).  Fed. R. Ev. 502; 23 *Fed. Prac. & Pro.*, Evid. § 5443 (2011).  Sub-section (a) of the Rule applies when a party intentionally (as opposed to inadvertently) discloses such information.  Rule 502(a) provides that a party such as Plaintiff who *intentionally* discloses and waives protection as to some information, *also* waives the protection for other, "undisclosed communication or information," if they "concern the same subject matter" and "they ought in fairness to be considered together."  The Advisory Committee

---

[10] The "Sword and Shield" doctrine is essentially the principle that it is not right, not fair, and not permissible for a party to use privileged material as a sword, and then claim privilege to shield that and related materials against further inquiry or use by the other party. *See, e.g., Kallas*, 2008 WL 2222152 at *5. *See also Pensacola Firefighters' Relief Pension Fund Bd. of Tr. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 596 (N.D. Fla. 2010)(explaining, without using "sword and shield" nomenclature, that the "doctrine of implied waiver prevents a privilege holder from disclosing only the privileged information beneficial to its position, while attempting to treat the 'harmful' privileged information as still privileged in order to gain advantage in litigation").

Notes explain that waiver extends to other, undisclosed information when necessary to prevent selective, misleading, and unfair use.

Accordingly, Plaintiff's intentional but selective use and disclosure of the Newman and Law materials in its Initial Disclosures should waive any work product protection as to not only the referenced materials but also all other Newman and Law materials that "concern the same subject matter"—as it is believed that they do—and that ought in fairness to National Union be considered together.

In its Initial Disclosures (Exhibit H), Plaintiff essentially says that all evidence that the Directors harmed American Superior, and to what extent, is contained in the Newman and Law materials, *which Plaintiff refuses to disclose*. Plaintiff wields the Newman and Law analyses as a sword, but when Defendant draws near, that sword transforms into a shield. Plaintiff's disclosures stated that "James W. Newman, Jr. opined as to the amounts of compensation received... He reviewed the records... he concluded..." (Ex. H, p.3)   Plaintiff's Initial Disclosures also stated that the "figures are supported by the analysis of James W. Newman, Jr." and the "figure is supported by the analysis of Richard Law." (Ex. H, p. 4, 6)  Plaintiff did not assert any privilege or protection for Newman's and Law's analyses. (*See* Ex. H)  However, Plaintiff has refused to produce these very "analyses." (*See* Ex. E, No. 2)

Additionally, in Plaintiff's answer to Interrogatory Number 8, discussed above, Plaintiff did not provide the "bases" of the alleged damages, but instead chose to refer to a "determin[ation] by Richard Law" and a "comparison by James W. Newman, Jr.," without producing those documents. (*See* Ex. B, No. 8)  In sum, Plaintiff answered that the answer is in these documents, which Plaintiff has, but which Plaintiff will not disclose.  Again, however, Plaintiff did not invoke any privilege as to the materials.  Plaintiff could have simply answered

the interrogatory, without reference to Newman and Law, but <u>Plaintiff chose to invoke and refer to Newman and Law's analyses</u>, to support its own claim that National Union's insureds caused over $15 million in damages.

Accordingly, Plaintiff has waived work product protection for the materials specifically mentioned in its Interrogatory answer and Initial Disclosures, and all related materials that should in fairness be disclosed.  Plaintiff should not be permitted to intentionally but selectively disclose information from and about Newman and Law, in a possibly misleading manner, without National Union being able to review *all* of the related material for a complete and accurate understanding, presentation, and testing of Plaintiff's evidence.  Plaintiff should be found to have waived all work-product protection for the Newman and Law materials under Evidence Rule 502(a).

### ii.    At Issue Waiver

"The doctrine of at-issue waiver is based upon the rationale that a party cannot withhold documents during discovery by invoking work product immunity if that party '<u>injects into the case an issue</u> that in fairness requires an examination of communications otherwise protected....'" *Maplewood*, 2011 WL 3918597 at *6 (emph. added). "Under this doctrine, a party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense." *Id.* at *7-8.

In the *Maplewood* decision, Senior Judge Hoeveler concluded that the plaintiffs waived work product immunity by placing—*with its very claim*—defendant's allocation of coverage "at issue." 2011 WL 3918597 at *9.

> Plaintiffs have brought a breach of contract suit alleging that Defendant did not make a fair and appropriate allocation of coverage. … It follows then, that the reasoning behind the assessments made by Plaintiffs' attorneys is extremely relevant to the issue of what a fair and appropriate allocation would be. The attorneys' opinions regarding the nature of the underlying parties and claims, as well as the apportionment of legal exposure that contributed to final settlement amounts, go directly to the issue of allocating what matters and parties are covered. Therefore, by challenging Defendant's allocation of coverage, Plaintiffs have put at-issue their attorneys' assessments of legal liability in the Underlying Matters. … Lastly, the documents Defendant requested are vital to its defense. To deny Defendant's request would deprive it of the sole source of information needed to compare the accuracy and propriety of the assessments (that informed its own allocation), to those relied upon by Plaintiffs. Therefore, by placing the Defendant's allocation of coverage at-issue, Plaintiffs have waived work product immunity over the remaining 708 documents identified in the privilege log.

Plaintiff here has, by its own strategic decisions, claims, answers, and disclosures waived any work product protection it could otherwise claim as to the Newman and Law materials, and satisfies each of the above elements for At Issue Waiver.  For example, Plaintiff's initial disclosures and interrogatory answer explicitly relied upon, deferred to, and referred to Newman and Law's analyses.  These analyses are highly relevant to Plaintiff's own claims—according to Plaintiff, they are key to the damages allegedly caused by each Director-Defendant to American Superior, and to calculating *Plaintiff's own* damages.  Additionally, and as discussed in detail on pages 3 and 10, Plaintiff must prove that the Coblentz agreements were reasonable, including reasonable in amount, and entered into in good faith.  Plaintiff's own privilege log reveals that it received Newman and Law's analyses. Those analyses are directly relevant to whether Plaintiff's eventual settlement of the 2007 Suit for over $15 million was reasonable and in good faith.  If, for example, Plaintiff's own "experts" advised it that there were only questionable or minimal damages caused by any of the Director-Defendants, how could Plaintiff's subsequent $15 million settlement against that defendant be reasonable *or* in good faith?  Likewise, if Plaintiff was advised by its own expert that there was inadequate evidence of excessive payments to any of the

Director-Defendants, how could Plaintiff's settlement be reasonable or in good faith?   At a minimum, such evidence would be relevant and potentially highly material to that issue.  Finally, and in any event, permitting Plaintiff to invoke work product and shield these materials would deny National Union access to information vital to its defense, for the same reasons.  *Even if* National Union were to hire its own expert to evaluate all of the financial information in DFS's warehouse about American Superior and each of the Directors, that expert could not replicate *what DFS knew or had been told, or what methodology its experts had used,* all of which are relevant to the good faith and reasonableness inquiries as to Plaintiff's $15 million settlement.

Under both Rule 502 and the "At Issue" doctrine, Plaintiff has waived any work product protection it could otherwise claim for the Newman and Law materials.

**B.      Plaintiff has been statutorily deprived of both attorney-client and work product "privileges" for almost all of these documents.**

Florida's Public Records Act requires public records to be made available for inspection and copying by members of the public. *See* F.S.A. § 119.07(1).  The Act deprives Plaintiff of any "work product" or "attorney-client" privilege or protection for the subject records.  All of the materials created prior to April 5, 2011 are public records, as defined by Chapter 119 of the Florida Statutes, and have been stripped of any expectation or entitlement of privilege or protection by those statutes.

**i.      The Materials Sought are "Public Records."**

"Public records" are broadly defined as <u>all</u> documents and other material "<u>made or received</u> pursuant to law or ordinance or <u>in connection with the transaction of official business by any agency</u>."  F.S.A. § 119.011 (12)(*emph. added*).

The Florida Department of Financial Services clearly qualifies as an "Agency" as defined by Florida Statute Section 119.011 (2).  The DFS's "official business" includes acting as receiver

for insurance companies such as American Superior, and it was in that capacity that DFS initiated and prosecuted the 2007 Suit against the American Superior directors. *See* Ex. C; F.S.A. §§ 631.031, 631.101, 631.111.   Likewise, DFS has brought the instant suit in its capacity as Receiver for American Superior. (Compl.)   DFS as Receiver prosecuted its 2007 Suit, was represented in that Suit, by *itself and its outside counsel,* Conrad & Scherer LLP. *See* Ex.C, p.10.

The statute defines "Agency" to also include any "person, partnership, corporation, or business entity acting on behalf of any public agency." F.S.A. § 119.011(2).   Accordingly, *even if* any of the materials sought were (to defy reason) *never* "made or received" by Jody Collins or any other DFS personnel, the law firm of Conrad & Scherer was a "business entity acting on behalf of any public agency."   Analogously, private lawyers representing a state agency in an appeal of an NCAA penalty were equated with the agency, so that documents received by those lawyers and used by those lawyers in their representation of the agency were public records. *NCAA v. Ass'd Press*, 18 So.3d 1201 (Fla. 1st DCA 2009)(documents were "public records because they were received by agents of the state and used in the course of the state's business"). The *NCAA* decision also explained: "It makes no difference that the records in question are in the hands of a private party. If they are public records, they are subject to compelled disclosure under the law." *Id.* at 1210. *See also B&S Utils., Inc. v. Baskerville-Donovan, Inc.*, 988 So.2d 17, 20 (Fla. 1st DCA 2008)("public records may sometimes be found in private hands.").   The Public Records Act includes such private entities "in order 'to ensure that a public agency cannot avoid disclosure under the Act by contractually delegating to a private entity that which otherwise would be an agency responsibility.'" *B&S Utils.*, 988 So.2d at 18.

Public records in this circumstance thus encompass records *made* by DFS, *received* by DFS, *made* by DFS's representative private counsel, or *received* by that counsel.  Looking to the

RFP Privilege Log, almost every entry indicates that it was made or received by DFS personnel or Conrad & Scherer personnel, who represented DFS in its 2007 Suit. (*See* Exs. C, F, F-1)  The remaining documents listed appear to have been attached to communications that *were* so made or received. (*See* Ex. F, lines 79-83)

> **ii.    No Exemption Applies, to Shield These Public Records.**

Although Florida's statutory public records scheme includes certain exemptions, Plaintiff has not cited to or advised counsel for National Union of any such claimed exemption. *Cf.* F.S.A. § 119.07(1)(e)("If the person who has custody of a public record contends that all or part of the record is exempt from inspection and copying, he or she shall state the basis of the exemption that he or she contends is applicable to the record, including the statutory citation to an exemption created or afforded by statute."). *See also Rameses, Inc. v. Demings*, 29 So.3d 418, 421 (Fla. 5th DCA 2010)("The government has the burden to demonstrate the applicability of a statutory exemption.").

Even the most facially-relevant statutory exemption – "(d)(1)" [11] – does not apply, because the subject litigation, the 2007 Suit, concluded on April 5, 2011.  *See* F.S.A. § 119.071 (d)(1).  On that date, judgment was entered against all remaining defendants in the 2007 Suit. (*See* Compl. Ex. E., Consent Judgment, p.1-2) Accordingly, Plaintiff has been statutorily deprived of any ability to now shield the records from inspection and copying.  National Union

---

[11] "A public record that was prepared by an agency attorney (including an attorney employed or retained by the agency or employed or retained by another public officer or agency to protect or represent the interests of the agency having custody of the record) or prepared at the attorney's express direction, that reflects a mental impression, conclusion, litigation strategy, or legal theory of the attorney or the agency, and that was prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings, or that was prepared in anticipation of imminent civil or criminal litigation or imminent adversarial administrative proceedings, is exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution until the conclusion of the litigation or adversarial administrative proceedings. For purposes of capital collateral litigation…" F.S.A. § 119.071(d)(1)(emph.added).

does *not* seek the production of records created *after* April 5, 2011, which are only identified on the Log as lines 140-141 and potentially unspecified records included in lines 204-206.

Thus, *even if* the subject records would otherwise qualify for the "(d)(1)" exemption, **that litigation has concluded**, and the exemption has ended. The statutory exemption is *temporary*, not permanent, and only applies during "pendency of litigation." *City of N. Miami v. Miami Herald Pub. Co.,* 468 So.2d 218, 219 (Fla. 1985). *See also Lightbourne v. McCollum,* 969 So.2d 326, 332 (Fla. 2007)("Importantly, any exemption under this section exists only until the conclusion of the litigation or, in the case of public records prepared for an appeal or postconviction proceedings, only until the execution of the sentence."). It supersedes the statutory attorney-client privilege found in F.S.A. § 90.502. *City of N. Miami,* 468 So.2d at 219-220; *Seminole County v. Wood,* 512 So.2d 1000, 1001-1002 (Fla. 5th DCA 1987). Nor is the instant suit against National Union a judgment collection action. *Cf. Wagner v. Orange County,* 960 So.2d 785, 791 (Fla. 5th DCA 2007)("conclusion of the litigation" encompasses post-judgment collection, such as legislative claim bill). Plaintiff does not have a judgment against National Union. Plaintiff here sues National Union as the Assignee of the Directors (Defendants in the underlying suit), claiming that National Union breached its insurance contract with the Directors, and seeking policy limits damages of $5 million (not the amount of the underlying judgment) for National Union's breach of contract. (Compl., p. 1, ¶ 31, 32-34, p.10)

Accordingly, Florida's public records laws have statutorily deprived Plaintiff of any privilege for the materials listed on its RFP Privilege Log that were created before April 5, 2011.

### C.   Clarifying the Privilege Log

Plaintiff seems to have erroneously attributed "Attorney Client" privilege to certain Newman or Law materials on its RFP Privilege Log. (*See, e.g.,* Ex. F, lines 198-199) National Union assumes for purposes of this Motion that Plaintiff intended to claim "work product" for

those materials, as it did for the others, and *not* attorney-client privilege, as there is no indication of such a relationship with either Law or Newman.

Additionally, although Plaintiff's Log describes some documents as simply "E-mail chain," and asserts both work product and attorney-client privilege, it is expected and requested that *if* Plaintiff is required to produce Newman and Law materials, and *not* other materials on the Log, then Plaintiff will separate and/or redact such e-mail chains so as to fully produce the Newman and Law materials. (*See, e.g.,* Ex. F, lines 58-59)

### III.   Plaintiff Must Produce Responsive Items Listed on the Johnson Privilege Log

National Union made a public records request to Florida DFS, Office of Insurance Regulation ("OIR"), and OIR provided responsive materials, including a batch of materials referred to as "Wayne Johnson e-mails." After National Union's receipt of the Wayne Johnson e-mails, Plaintiff's counsel asked that National Union return the Wayne Johnson e-mails because they contained privileged materials. National Union did so. Plaintiff's counsel then provided National Union with certain of the Wayne Johnson e-mails, and provided a privilege log listing Wayne Johnson e-mails that Plaintiff had withheld (Exhibit G, "Johnson Log"). The circumstances thus indicate that all of the materials listed on the Johnson Log are in Plaintiff's custody, control, or possession.

In addition to its public records request, National Union also specifically asked and reminded Plaintiff to produce all documents listed on the Johnson Log which are responsive to any of National Union's Requests for Production. Plaintiff has not done so. The substance of the Johnson Log does not enable National Union to actually identify the scope, purpose, or even topics of all its documents,[12] but it appears from the limited information provided by the log that

---

[12] "The consequence of serving a deficient privilege log may be the waiver of a privilege claim." *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 43 (S.D.N.Y. 2009).

at least some of the materials listed fall within the scope of Requests Nos. 6,[13] 9,[14] 13,[15] and 20.[16]

Moreover, Plaintiff made no objection to producing the documents called for by Requests numbers 6, 9, and 13, and its objections to Request No. 20 should be over-ruled, at least insofar as Request No. 20 applies to the Johnson materials.

Except as carved out below, **Plaintiff should be ordered to produce all materials listed on the Wayne Johnson log that are responsive to any of National Union's Requests for Production.**  Plaintiff already has these discrete materials in hand—there can be no legitimate claim of undue burden or over-breadth.  National Union's requests are clear.

Plaintiff has also been statutorily deprived of privilege as to materials prepared for or in

---

[13] **6. All documents constituting, reflecting, or referring to communication (whether oral, written, or otherwise) among two or more of the following, and referring in any way to the Policy, the 2007 Suit, or any claim or potential claim under the Policy: DFS, National Union, any of the defendants named in the 2007 Suit, or any claim or potential claim under the Policy: DFS, National Union, any of the defendants named in the 2007 Suit, Synaxis Van Meter n/k/a Van Meter Insurance.**  Response: Responsive documents will be made available for inspection and copying at the undersigned's office.

[14] **9. All documents or other forms of evidence or potential evidence created, compiled, received, collected, or requested by DFS in preparation for or for the purposes of preparing, prosecuting, trying, or otherwise resolving the 2007 Suit.  This includes, without limitation, all materials of any kind that DFS identified as potential trial exhibits in any discovery, exhibit list, witness list, or other communication with opposing counsel in the 2007 Suit.**  Response: Responsive documents will be made available for inspection and copying at the undersigned's office.

[15] **13. All documents created, commissioned, requested, or received by the DFS or OIR delineating, explaining, discussing, analyzing, summarizing, or reporting the financial condition or potential financial condition (including without limitation the solvency or insolvency) of American Superior.  This includes, without limitation, any examiner's notes: (a) relating to statements of financial condition or reports that were filed with the OIR or DFS by American Superior; or, (b) in connection with any financial examination of American Superior conducted by or for OIR or DFS.**  Response: Responsive documents within the Department's possession will be made available for inspection and copying at the undersigned's office and at the Department's offices in Tallahassee, Florida.  Additionally, the attached inventory list shows those responsive documents the Department has in its possession in its Tallahassee warehouse.

[16] National Union's Request No. 20, and Plaintiff's response, is set forth at footnote 9.

anticipation of the 2007 Suit, which litigation concluded on April 5, 2011.   Accordingly, National Union **does not seek the production of the materials listed at lines 124 through 142** of the Johnson Log. (*See* Ex. G)

National Union's ability to evaluate the Johnson Log materials is stymied by the lack of information contained in the Johnson Log (for example, many of the "Subjects" are simply "American Superior").   However, National Union specifically notes lines 64, 65, 93, 95-98, and 100 as being of likely relevance and responsiveness. (*See* Ex. G)  Moreover, to the extent that Plaintiff has failed to provide a meaningful privilege log in support of its assertions of privilege, its claims of privilege are <u>waived</u>. *See* Fed. R. Civ. P. 26(b)(5)(A).

Accordingly, National Union asks that Plaintiff be compelled to produce all materials listed on lines 1 through 123 of its Johnson Log that are responsive to any of National Union's Requests for Production.

## **CONCLUSION**

Plaintiff should answer the four specified interrogatories promptly, completely, and without objection.

Plaintiff should produce all documents from its RFP Privilege Log that were created before April 5, 2011, because Plaintiff is statutorily deprived of any privilege. In the alternative, Plaintiff should produce all documents listed on the RFP Privilege Log that were created by, sent to, or received from James Newman or Richard Law, because Plaintiff has waived any work product protection for those Newman and Law materials.

Additionally, Plaintiff should produce all materials listed on lines 1 through 123 of its Johnson Log that are responsive to any of National Union's Requests for Production, as it has been statutorily deprived of any privilege.

WHEREFORE, National Union respectfully requests that the Court enter an Order:

(1) Requiring Plaintiff to answer Interrogatories 8, 13, 18, and 19, in full and without objection;

(2) Requiring Plaintiff to produce all documents listed on Exhibit F to this Motion which were created before April 5, 2011, or, in the alternative, requiring Plaintiff to produce all documents listed on Exhibit F to this Motion which were created by, sent to, or received from James Newman or Richard Law;

(3) Requiring Plaintiff to produce all documents listed on lines 1 through 123 of Exhibit G to this Motion that are responsive to any of National Union's Requests for Production; and,

(4) Granting such other and further relief for National Union as the Court deems just and proper.

## Certificate of Conferral

Counsel for National Union has conferred in good faith with Plaintiff's counsel in an attempt to obtain the discovery sought by this motion without court action.

Respectfully submitted,

s/ *Ashley Daugherty*

**CARLTON FIELDS, P.A.**
Robert W. Pass
FL Bar No. 183169
E-mail: rpass@carltonfields.com
215 S. Monroe Street, #500 (32301)
P. O. Drawer 190
Tallahassee, FL 32302
(850) 224-1585; (850) 222-0398 Fax

Steven J. Brodie
FL Bar No: 333069
Email: sbrodie@carltonfields.com
Ashley Daugherty
FL Bar No. 0612251
E-mail: adaugherty@carltonfields.com
100 S.E. 2nd Street

P.O. Box 019101
Miami, FL 33131
(305) 530-0050; (305) 530-0055 Fax

*Attorneys for Defendant, National Union*
*Fire Insurance Company of Pittsburgh, Pa.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __2nd_ day of DECEMBER, 2011, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

s/ *Ashley Daugherty* _____
Attorney

27

## EXHIBITS

National Union's First Set of Interrogatories                                 **Ex. A**

Plaintiff's Amended Answers to National Union's Interrogatories               **Ex. B**

2007 Complaint by DFS Against Directors                                       **Ex. C**

National Union's First Requests for Production                                **Ex. D**

Plaintiff's Responses to National Union's Requests for Production             **Ex. E**

Plaintiff's Privilege Log for its Responses to Requests for Production        **Ex. F**

List of Individuals for Plaintiff's RFP Privilege Log,                        **Ex. F-1**
      *Excerpt of October 18, 2011 Letter from Conrad & Scherer to Carlton Fields*

Plaintiff's Privilege Log for Wayne Johnson Materials,                        **Ex. G**
      *As provided November 10, 2011 by Conrad & Scherer*

List of Individuals for Plaintiff's Johnson Privilege Log                     **Ex. G-1**
      *As provided November 10, 2011 by Conrad & Scherer*

Plaintiff's Supplemental Rule 26 Disclosures (October 24, 2011)              **Ex. H**